**COMMODITY FUTURES TRADING COMMISSION, Plaintiff**

v.

**STANDARD FOREX, INC., et al., Defendants.**

**No. CV–93–0088 (CPS).**

United States District Court, E.D. New York.

Feb. 27, 1995.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This is an action by plaintiff Commodity Futures Trading Commission (the "CFTC") for violation of the Commodities Exchange Act. 7 U.S.C. §§ 1 *et seq.* Defendant Yuanyi Lao ("Lao") now objects, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, to an order entered by Magistrate Judge Roanne Mann: (i) directing Longo & Bell, the former counsel to defendant Standard Forex, Inc., to turn over to the equity receiver for Standard Forex, Samuel Abernethy, Esq. (the "Receiver"), Longo & Bell's pre-litigation file of its communications with Standard Forex and (ii) granting the Receiver the power to assert or waive the attorney-client privilege of Standard Forex. For the reasons set forth below, the magistrate judge's decision is affirmed.

## BACKGROUND

On January 8, 1993, the CFTC commenced this action and obtained an *ex parte* temporary restraining order (i) barring Standard Forex from continuing to engage in foreign exchange currency transactions and (ii) appointing the Receiver as temporary equity receiver to seize the assets of Standard Forex, on the grounds that Standard Forex was allegedly violating the Commodity Exchange Act by offering and selling futures contracts to the public, in violation of 7 U.S.C. § 6(a), and committing fraud in connection with those sales, in violation of 7 U.S.C. § 6b(a). Among other parties, the CFTC also named as defendants in the action Lao and James Feng, a director and vice president, respectively, of Standard Forex.

On August 9, 1993, the Court issued a preliminary injunction (i) enjoining defendants from continuing to violate the Commodities Exchange Act, (ii) continuing the appointment of the Receiver, and (iii) freezing Standard Forex' assets. On August 23, 1993, the CFTC added Pundi Forsten International, the former 50% shareholder of Standard Forex, and Moses Wong, a former director of Standard Forex, as defendants. On March 18, 1994, the Court referred the case to Magistrate Mann for the supervision of discovery in the action.

On October 14, 1994, the CFTC directed Longo & Bell by subpoena to appear at a deposition on November 22, 1994, and to produce any documents that it had relating to Standard Forex and the subject matter of the litigation. Longo & Bell objected to the production of documents, asserting that its files contained documents that were covered by the attorney-client privilege.

The CFTC moved for an order from Magistrate Mann compelling production of the subpoenaed documents. Defendants Lao and Feng opposed the application.

At a hearing on November 22, 1994, Magistrate Mann granted the CFTC's application and directed Longo & Bell to produce its Standard Forex file and any other documents responsive to the subpoena served on it to the Receiver by December 6, 1994. Magistrate Mann predicated her order on the grounds that, pursuant to *CFTC v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), and its progeny, the power to assert or waive the attorney-client privilege of Standard Forex rests with the Receiver, who functions as the management of the company in receivership.

Magistrate Mann denied Lao's motion for a stay pending this Court's review of her order pursuant to Fed.R.Civ.P. 72(a). Lao then applied to this Court for a stay pending review. On December 6, 1994, the Court granted Lao's motion and stayed Magistrate Mann's order pending further review. Longo & Bell and defendant Feng have joined in Lao's appeal of Magistrate Mann's order. Plaintiff CFTC and the Receiver have filed

papers urging affirmance of Magistrate Mann's order.

## DISCUSSION

▇▇▇ Under 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, a district court may overturn a magistrate's order on a nondispositive matter when such order is "found to be clearly erroneous or contrary to law." Pretrial matters involving discovery are generally considered nondispositive since they do not resolve the substantive claims for relief alleged in the pleadings. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). This includes issues of privilege. *See, e.g., Alpex Computer Corp. v. Nintendo Co., Ltd.,* 1992 WL 51534 (S.D.N.Y. March 10, 1992). Accordingly, Magistrate Mann's decision should be reviewed under a clearly erroneous standard of review. The Supreme Court has recognized that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused. *Federal Ins. Co. v. Kingsbury Properties, Ltd.,* 1992 WL 380980, at *2 (S.D.N.Y. Dec. 7, 1992).

Magistrate Mann predicated her decision primarily upon *Weintraub.* 471 U.S. 343, 105 S.Ct. 1986. There, the Supreme Court held that a trustee in bankruptcy has the power to assert or waive the debtor's attorney-client privilege. The Court premised this conclusion on the fact that a corporation, as an inanimate entity, must act through agents. While, for a solvent corporation, that agent is normally the corporation's management, for a corporation whose affairs are being managed by a trustee for the benefit of shareholders and creditors alike, that agent is the trustee. *Id.* at 356, 105 S.Ct. at 1994–95. It is otherwise at odds with the purposes of instituting a trustee to circumscribe his or her powers solely with respect to the attorney-client privilege. *Id.*

This issue has been rarely addressed with respect to receivers appointed outside of the bankruptcy context, and *Weintraub* presents the closest analogous situation. Lao argues that *Weintraub* is inapposite since the Court admonished that "for solvent corporations, this right rests with its directors and officers." 471 U.S. at 356, 105 S.Ct. at 1995. The focus of *Weintraub,* however, was not with this dicta but, rather, with whom the attorney-client privilege vests upon a change in control of a corporation. *Id.* at 349, 105 S.Ct. at 1991. In reaching its ultimate conclusion, the Court was concerned less with the linguistic difference between whether the person happens to be a trustee or a receiver and more with a functional analysis—in other words "the roles played by the various actors ... to determine which is most analogous to the role played by management," *id.* at 351, 105 S.Ct. at 1992—and from that concluded that the trustee is that person and should have the rights granted by the attorney-client privilege.[1]

The powers granted to the Receiver by the Court's orders of January 8 and August 9, 1993, were very broad and of a like nature of the powers granted a bankruptcy trustee. The Receiver was authorized, *inter alia,* (i) to take immediate custody, control, and possession of all assets and property belonging to or in the possession, custody, and control of Standard Forex, (ii) to collect and take charge of, hold and administer such assets and property in order to prevent irreparable loss, damage and injury to any customers of Standard Forex and to conserve and prevent the dissipation of funds held by Standard Forex, and (iii) to remove the individual defendants to this action and other manage-

---

1. In all events, Standard Forex is not solvent. The Receiver stated on the record before Magistrate Mann that the company was dormant, making it more like a bankrupt corporation than a solvent, ongoing entity. Moreover, the Receiver also stated that the assets of the company are radically less than the claims against it, with $4,281,975.55 in current claims against the company against $905,000 in funds available to the company. While Lao contends that Standard Forex is solvent, he relies upon financial information from 1992.

ment personnel from control and management of Standard Forex. These powers vest the essential powers of management in the Receiver. Indeed, the orders explicitly granted the Receiver the authority to usurp the managerial prerogatives of Standard Forex' management,. much the same way a trustee in bankruptcy is given the authority to take control of a bankrupt corporation. *See, e.g., In re Boileau,* 736 F.2d 503, 506 (9th Cir.1984) (Where court-appointed examiner, whose duties are usually more circumscribed than a trustee, was given expanded powers similar to those of a trustee, examiner would have the authority to assert or waive the attorney-client privilege).

The Receiver also has the power to sue and be sued in the name of Standard Forex. The Court authorized the Receiver· to hire accountants, attorneys, and investigators to pursue and defend against claims on behalf of Standard Forex, and the Receiver ·has both commenced and defended against lawsuits in Hong Kong. The Court also extended the Receiver's powers and allowed him to investigate and ascertain the legal and financial relationships among the defendants.

In all, the Receiver has performed many essentially management roles, including: (i) appearing as a third-party defendant in a lawsuit in Hong Kong concerning frozen accounts in which Standard Forex customers had a potential interest; (ii) instituting two lawsuits in Hong Kong against defendants Pundi Forsten International and Moses Wong, seeking to trace Standard Forex customer funds and impose a constructive trust; (iii) causing banks with Standard Forex as-

sets to transfer funds to accounts ·under the Receiver's control; (iv) receiving claims asserted by Standard Forex' creditors; (v) terminating office, equipment and service leases; and (vi) auctioning the office furniture and equipment. These management functions, especially those involving legal actions, evidence that the Receiver and not any former management has ultimate control of the company. *See Federal Deposit Insurance Corp. v. McAtee,* 124 F.R.D. 662, 663–64 (D.Kan.1988) (attorney-client privilege should transfer to a receiver who supplants the prior management and performs management functions) (citing *Federal Deposit Insurance Corp. v. Amundson,* 682 F.Supp. 981, 986–87 (D.Minn.1988)).[2]

Nevertheless; even though the Court could have granted to the Receiver the right to assert or waive the attorney-client privilege on behalf of Standard Forex, the preceding analysis and line of cases do not mandate that the Court do so. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote public interests in the observance of law and administration of justice," *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981), and to unnecessarily abrogate the protections of the attorney-client privilege would undermine this important goal. Accordingly, only if there is some valid reason why the Receiver needs to control Standard Forex' attorney-client privilege will the Court hold that it granted such power.[3]

---

**2.** Lao argues that the Court does not have the power to transfer control of the attorney-client privilege to the Receiver and attempts to distinguish the line of cases cited in *McAtee,* 124 F.R.D. at 663–64, which extends the *Weintraub* rule to FDIC receivers (Longo & Bell admits that the Court has the power to transfer control of the attorney-client privilege to the Receiver). Lao argues that such cases addressed receivers appointed pursuant to statutory authority and did not address receivers appointed for equitable reasons. This reasoning, however, is misplaced. The rationale behind the extension of the *Weintraub* rule there was not the presence of a statute but, rather, that the attorney-client privilege should transfer to a receiver who supplants the prior management and performs management

functions. *McAtee,* 124 F.R.D. at 664. This is the same scenario presented here, and Lao offers no rationale as to why the same rule should not apply here.

**3.** Magistrate Mann ·nevertheless acted properly since, in the absence of any guidance from this Court, the broad scope of its order appointing the Receiver evidences an intent to include the attorney-client privilege with it. Nevertheless, the Court is free to interpret or revisit its prior orders in this action for the purpose of clarifying the scope of the powers granted to the Receiver and is also free to amend its prior orders to prevent control of the attorney-client privilege by the Receiver.

■ The CFTC contends that the Receiver should be granted control over the attorney-client privilege so that the Receiver can assist the CFTC in discovering the truth as to Standard Forex' violation of the Commodities Exchange Act and whether any of the individual defendants directly or indirectly violated the Act. In essence, the CFTC believes that the communications possessed by Longo & Bell may provide evidence on the issue of who actually controlled Standard Forex during the time relevant to this action and who knowingly induced it to engage in the illegal conduct alleged. The CFTC is especially interested in whether this is true of defendants Lao and Feng, since they both have denied having any control over Standard Forex despite their high management positions. The CFTC also believes that Longo & Bell may have copies of documents relevant to this action, such as the joint venture agreement for the Chinatown office of Standard Forex.[4]

The Receiver has also indicated that the documents possessed by Longo & Bell contain information that will assist him in taking legal action against certain third parties to recover assets of Standard Forex. This is an essential element of the Receiver's role here.[5]

Lao objects to the Receiver making his showing *ex parte* since the Receiver did not first make a showing that he had a need to make an *ex parte* application. At the December 6, 1994 hearing on the motion for a stay pending review, the Court stated that, while it would entertain an *ex parte* application by the Receiver, it first "would like a showing why it has to be." The Receiver has not made this showing to all the parties, although he did in his *ex parte* papers submitted to the Court.

In all events, no prejudice will result from granting the Receiver control over the attorney-client privilege. The Receiver is the only individual with any present or likely future managerial control over Standard Forex. Defendants Lao and Feng have completely divorced themselves from any association with Standard Forex. They have both asserted as defenses to this action that they never possessed the authority to manage Standard Forex. Moreover, neither Lao and Feng, nor any other former principal of Standard Forex, opposed the CFTC's motion to enter a default judgment against Standard Forex. Further, when the Receiver sought authority to auction off the office furniture of Standard Forex, the Court stated that it would allow such auction unless any former principal of the company submitted an affidavit stating that they intended to go back into business under the name Standard Forex. None of the principals filed such papers. Nevertheless, Lao, Feng and Longo & Bell argue that the attorney-client privilege must remain with Standard Forex. This argument, however, falls of its own weight since a corporation can only act through its management and the Receiver is the only party operating Standard Forex, and no other party had evidenced a willingness to operate the company after the Receiver has finished his duties.

The attorney-client privilege belongs to the entity, Standard Forex, and not to any individual formerly employed by or in control of Standard Forex. *Polycast Technology Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49 (S.D.N.Y. 1989). Accordingly, in the absence of any individual asserting the right to control Standard Forex or its successor entity, there is no prejudice that would ensue by granting to the Receiver the right to control the company's attorney-client privilege.[6] Moreover, there is no chilling effect here since the attorney-client privilege of Standard Forex is

---

4. Defendant Lao testified at his deposition that such a joint venture agreement existed but that he did not have a copy of it. The CFTC alleges that the operations of the Chinatown office are highly relevant to its case in this action.

5. The Receiver filed his papers *in camera* so as to avoid revealing in advance the proposed actions that he will take against these parties.

6. Lao asserts that he might bring a motion to dismiss the action for lack of subject matter jurisdiction, and if he wins, the receivership would be dissolved, and Standard Forex would be free to resume its pre-seizure activities. This argument, however, begs the question since the Court gave the former principals of Standard Forex the opportunity to state that they intended to resume business under the Standard Forex name, and no party stated such an intent.

remaining in the hands of its management, the Receiver here. *See Weintraub*, 471 U.S. at 357, 105 S.Ct. at 1995 ("[I]ndividual officers and directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel.").[7]

Finally, Lao contends that the CFTC's motion to Magistrate Mann is not ripe since it may turn out that the documents it is seeking are not protected by the attorney-client privilege. However, Longo & Bell in response to the CFTC's subpoena has clearly stated that it objects to the production of such documents, asserting that its files contain documents that are covered by the attorney-client privilege. This raises a colorable dispute. In all events, the Receiver is also seeking the right to assert Standard Forex' attorney-client privilege on an ongoing basis, so the Court is also addressing the issue in terms of an extension or clarification of its order appointing the Receiver.

Accordingly, for the reasons set forth herein, the decision of Magistrate Mann is affirmed.

The Clerk is directed to mail a copy of the within to all parties and to Magistrate Judge Mann.

SO ORDERED.

---

**7.** To the extent that the documents at issue reflected a communication with a manager of the corporation as to his individual legal questions, the privilege would remain with that individual. *Weintraub*, 471 U.S. at 350, 105 S.Ct. at 1991–92.