**POPULAR IMPORTS, INC., Plaintiff,**

v.

**WONG'S INTERNATIONAL, INC., Defendant.**

No. 94 CV 4610.

United States District Court, E.D. New York.

April 16, 1996.

---

Ostrolenk, Faber, Gerb & Soffen (Charles P. LaPolla, of counsel), New York City, for plaintiff.

Rosenfeld & Jacobs (Tab K. Rosenfeld, of counsel), New York City, for defendant.

### MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Popular Imports, Inc. ("Popular Imports"), a seller of miniature tea sets manufactured in the People's Republic of China ("China"), brings this action alleging, *inter alia*, that defendant Wong's International, Inc. ("Wong's") has infringed its copyright and trade dress by marketing similar tea sets from China.

By Memorandum and Order dated September 29, 1995, attached hereto, Magistrate Judge Roanne L. Mann denied Popular Imports' motions to suppress deposition testimony taken in China and for the costs and fees incurred in taking these depositions. Under Rule 72(a) of the Federal Rules of Civil Procedure, Popular Imports appeals the ruling. The court adopts and affirms Magistrate Judge Mann's order.

### I

On June 7, 1995 Wong's served notices of deposition on eight non-party witnesses located in China. During a telephone conference on June 9, 1995, Popular Imports complained of the costs and burdens of attending depositions in China, but did not object that such depositions would violate Chinese law. Magistrate Judge Mann directed the parties to proceed with the depositions in China.

On June 23, 1995, the parties submitted, and the Magistrate Judge endorsed, a stipulation (the "Stipulation") laying out the procedures for the depositions. Among other things, the Stipulation provided that a "local Public Security Officer" could administer the oath or affirmation "in accordance with local custom and practice."

The depositions took place in China on June 26–28, 1995. By letter dated September 8, 1995, Popular Imports informed Magistrate Judge Mann that Chinese law does not permit the taking of even voluntary depositions without official authorization, which may be obtained only by submitting letters rogatory. Popular Imports said that because the unsworn depositions were illegal and because some of the third-party witnesses had since recanted their testimony, the court should suppress all of the third-party depositions taken in China. Popular Imports made much of its understanding that taking the depositions on notice had placed the attorneys for both parties at risk of arrest in China.

### II

Under Rule 72(a) of the Federal Rules of Civil Procedure, the court considers objections to the nondispositive ruling of a magistrate judge and will "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to the law." Fed.R.Civ.P. 72(a). Pretrial discovery questions are generally considered nondispositive and are thus reviewed under this "clearly erroneous" standard. *See Commodity Futures Trading Comm'n v. Standard Forex, Inc.*, 882 F.Supp. 40, 42 (E.D.N.Y.1995).

Popular Imports makes several objections to the Magistrate Judge's ruling. It says that the Public Security Officer who administered oaths at the depositions did not do so "in accordance with local custom and practice," as required by the Stipulation. Popu-

lar Imports says that because the depositions were illegal under Chinese law, "the Public Service Officer could not have had authority under Chinese law" to administer the oath. Magistrate Judge Mann properly rejected this argument, for reasons stated in her decision.

■ Popular Imports now says for the first time that the Public Security Officers do not have authority to administer oaths in China. In support of this contention, it submits a portion of a Martindale–Hubbell International Law Digest describing the role of notaries public in China, and also a letter from one Li Sen–Long, an individual who claims to have participated in one day of the depositions and says that his participation "was an act of no lawful effectiveness."

Popular Imports did not raise this argument before Magistrate Judge Mann. Moreover, the evidence it now offers does not prove that public security officers may not administer oaths in China. The court will not overrule Magistrate Judge Mann's decision on an unproven theory that was not even presented to her.

■ Popular Imports also says that it has now uncovered evidence that the third-party witnesses testified falsely at the depositions in China. It says that it will have to conduct further depositions in China to rebut the testimony already obtained and that proceeding through letters rogatory will be time consuming and expensive, and will likely prove fruitless. Because Popular Imports is "effectively prevented from obtaining evidence needed to counter" testimony given in the allegedly illegal depositions in China, it asks the court to suppress the results of those earlier depositions.

Popular Imports says that it did not raise objections concerning the legality of the depositions because it thought that such objection would be futile. It says that Magistrate Judge Mann had already overruled its previous objections and that it believed that she was already convinced that the depositions in China should proceed. But the Magistrate Judge's prior ruling addressed only the cost and convenience of the deposition. Popular Imports had never hinted that the deposition in China might be illegal. Under these circumstances, Popular Imports could not reasonably conclude that objection based on Chinese law would be futile.

## III

Magistrate Judge Mann's decision is affirmed.

So ordered.

## MEMORANDUM AND ORDER

MANN, United States Magistrate Judge.

Among the myriad issues recently raised by the parties in this contentious litigation between family members, plaintiff Popular Imports, Inc. seeks an order (1) suppressing the testimony adduced by defendant Wong's International Trading, Inc. during third-party depositions conducted in China in June 1995, pursuant to a so-ordered stipulation between the parties, and (2) directing that defendant reimburse plaintiff for the costs and fees incurred in attending those depositions. For the reasons that follow, plaintiff's application is in all respects denied.

### FACTUAL BACKGROUND

Plaintiff, which markets miniature tea sets manufactured in China, alleges in its amended complaint that defendant has committed, among other things, trade dress and copyright infringement by marketing similar tea sets, also from China.

On June 9, 1995, this Court held a telephone conference with the parties to resolve a dispute concerning deposition notices served by defendant on eight non-party witnesses located in China. Plaintiff complained of the costs and burdens imposed in attending depositions in China. Plaintiff did not allege that the depositions would in any way violate Chinese law.

Noting that the proposed depositions in China were critical to the issues in this case,[1]

---

1. At an evidentiary hearing before this Court on plaintiff's then pending motion for a preliminary injunction, Susan Fung, a principal of plaintiff, testified that plaintiff's tea set designs were original and had been created in China by an affiliated entity (Shanghai Catherine Traveling &

the Court declined to halt the depositions on the grounds cited by plaintiff. In addition, the Court authorized defendant to serve a deposition notice on plaintiff, pursuant to Fed.R.Civ.P. 30(b)(6), to produce a person with knowledge in China concerning the alleged granting to plaintiff of the exclusive rights to the tea set designs.[2] Because plaintiff had not had an opportunity to make a written submission addressing these issues, the Court gave plaintiff until June 15, 1995 to submit such a letter-brief. (*See* Calendar Order of 6/9/95.)

By letter to the Court dated June 15, 1995, plaintiff consented to produce under Rule 30(b)(6) (either in China or New York) a representative of Shanghai Catherine Traveling & Handicraft Company.[3] Plaintiff also reiterated its request that defendant be required to bear plaintiff's travel costs and counsel fees in attending the depositions in China. In addition, plaintiff raised a new issue with the Court, asking to postpone the depositions in China until after plaintiff moved to amend its complaint. Plaintiff did not, however, challenge the proposed depositions as illegal under Chinese law.

On June 21, 1995, after receiving defendant's written response, the Court held another telephone conference with the parties. The Court declined to adjourn the depositions, or to order defendant to prepay plaintiff's costs and fees. Again, plaintiff made no claim that the impending depositions were in any way illegal. (*See* Calendar Order of 6/21/95.)

On June 23, 1995, this Court so-ordered a stipulation executed by the parties concerning the conduct of the depositions in China. Among other things, the stipulation provided that a local public security officer from the city where the depositions were held could administer the oath or affirmation "in accordance with local custom and practice...." (Stipulation and Order at ["Stip."] at ¶ 2.)

The depositions were held in China on June 26, 27 and 28, 1995. (*See id.* at ¶ 1.) More than two months later, in a letter dated September 8, 1995, plaintiff for the first time argued that the depositions were illegal, in that defendant "did not utilize the required Letters Rogatory procedure and did not obtain authorization from the Chinese government for the taking of the depositions." (Letter to the Court dated September 8, 1995, from Charles P. LaPolla, Esq., ["9/8/95 LaPolla Letter"], at p. 2.) Plaintiff further argued that "the depositions were not taken before a person authorized by the law of China to administer oaths as required by F.R.C.P. 28(b)." (*Id.*) In advancing its position, plaintiff relied on a letter dated August 30, 1995, to plaintiff's counsel from an employee of the United States Department of State. (*Id.* at Exhibit 1.) The final paragraph of that letter expressly cautioned: "This is an informational letter, not a legal opinion, and it is not our intention to take a position on any aspect of any pending litigation." (*Id.* at Exhibit 1, p. 3)

In a submission devoid of any case law or other authority, defendant has opposed plaintiff's application. (*See* Letter to the Court dated September 13, 1995, from Tab K. Rosenfeld, Esq. ["9/13/95 Rosenfeld Letter"].)

### DISCUSSION

Contrary to the implications of the parties' submissions, this Court need not determine whether the depositions in question complied with either Chinese law or the procedures set forth in Fed.R.Civ.P. 28(b) with respect to the taking of depositions in foreign countries. Pursuant to Rule 29—which is cited by neither party—the parties may by written stipulation "provide that depositions may be taken before any person, at any time or place, upon any notice, and in any manner and when so taken may be used like other deposi-

---

Handicraft Company) for the exclusive use of plaintiff. In contrast, Jimmy Wong, a principal of defendant and Fung's brother, testified that tea sets of the type marketed by both parties were widely available in China and were offered for sale to the public at the Canton fair.

Neither party called any witnesses from China to substantiate its claims.

2. *See* preceding footnote.

3. Notably, assuming this witness was produced in China, his or her testimony is nevertheless not the subject of plaintiff's suppression motion, which is directed toward only the non-party witnesses.

tions...." Thus, "agreement of the parties provides an alternative to the avenues for depositions abroad afforded by Rule 28." Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2091, at 684 (2d ed. 1994). In this case, the parties stipulated to the procedures to be followed in connection with the foreign depositions; thus, plaintiff's reliance on Rule 28(b), and his after-the-fact challenge to the officer who administrated the oath, are not well taken.[4]

Citing an informal communication from a State Department employee, plaintiff additionally argues that China does not permit depositions by notice or commission, but only by a request through diplomatic channels—which request is "likely to be denied by Chinese authorities." (9/8/95 LaPolla Letter, at p. 2.) According to plaintiff, the procedure agreed to and followed in this case thus "put the attorneys for both parties at risk of arrest in China." (*Id.*)

Had plaintiff raised this issue prior to the taking of the depositions, and had the Court concluded that the procedures proposed would in fact have violated Chinese law, the Court would of course have been loathe to authorize procedures that would have put counsel at risk and might well have generated diplomatic friction. But the Court is not now faced with the issue of prospective application of Rule 29.[5] Rather, the question is what if any remedy is available after the parties have, without incident, taken foreign depositions pursuant to stipulation, with no objection on the grounds now alleged. Plain-

tiff cites no case law in support of its position that suppression is warranted in these circumstances, and the Court's own research has uncovered no such authority.

Indeed, an analogous argument was raised and rejected in *Laverett v. Continental Briar Pipe Co., Inc.*, 25 F.Supp. 790 (E.D.N.Y. 1938). In *Laverett*, the court held that an attorney who stipulated that deposition testimony be taken before any of five named persons, without first satisfying himself as to the possible disqualification of any of them, waived the right to suppression of the resulting testimony even though the stenographer utilized was employed by opposing counsel. *Id.* at 791.[6]

So too here, plaintiff's failure to have raised in advance any objection based on Chinese law constitutes a waiver of his claim for suppression on that ground. To conclude otherwise would foster sandbagging by the parties: A party without advance knowledge as to how a foreign witness will testify might well choose not to assert a violation of international law until after unfavorable deposition testimony has been given. While the Court prefers not to encourage violations of international law, it refuses to reward wilful ignorance on the part of counsel.

Accordingly, where, as here, a party fails to raise issues of foreign illegality until after a deposition has been taken, that objection has been waived, the parties' Rule 29 stipulation controls, and the deposition "may be

---

**4.** In an attempt to circumvent the written agreement reached by the parties, plaintiff argues that the administration of the oath by a local security officer did not comply with the terms of the parties' stipulation, which required that such administration be "in accordance with local custom or practice...." (9/8/95 LaPolla Letter, at p. 2, quoting Stip. at ¶ 2.) However, the purpose of this provision was to ensure that the officer utilized would be a person with authority to administer oaths. Plaintiff makes no claim that the officer in question was not empowered to administer oaths. Rather, plaintiff contends in effect that China does not recognize depositions for use in foreign cases—an entirely separate question that is addressed in the pages that follow.

**5.** Those commentators who have noted the limitations of Rule 29 with respect to foreign deposi-

tions have all done so in terms of what the parties may agree to do *in the future. See, e.g.*, 4 *Moore's Federal Practice* ¶ 28.07, at 28–28 (2d ed. 1995) ("The procedure prescribed by the parties' stipulation will, however, normally prove workable only if the witness is willing to testify and if the procedure agreed to by the parties does not violate the law of the country in which the deposition is taken"); 8 Wright, *supra*, § 2091, at 685 n. 3, quoting Myrick, *Obtaining Evidence Abroad For Use In United States Litigation*, 15 Suffolk Transnat'l L.J. 1, 8 (1991) (use of Rule 29 "cannot obviate compliance with the local law of the country wherein the discovery is sought").

**6.** The Court in *Laverett* did agree to allow the movant to withdraw from the stipulation with respect to future depositions. *Id.*

used like other depositions...." Fed. R.Civ.P. 29.

### CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion to suppress the foreign deposition testimony and for costs and fees.[7]

SO ORDERED:

Dated: Brooklyn, New York

     September 29, 1995

---

**7.** Defendant suggests in passing that plaintiff be required to reimburse defendant for its costs in opposing plaintiff's motions. (*See* 9/13/95 Rosenfeld Letter, at p. 3.) Defendant has made no attempt to comply with the procedural mandates of Rule 11. *See* Fed.R.Civ.P. 11(c)(1)(A). More-

over, although the Court has ruled in favor of defendant on this motion, it has done so in spite of, and not because of, the unprofessional personal attacks contained in defendant's submission. Defendant's proposal is therefore rejected.