Emerson Electric v. Ouellette, et al. CV-96-364-B    05/12/98

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Emerson Electric Co.**

    **v.**                           Civil Action No. 96-364-B

**Raymond R. Ouellette;**
**Ouellette, Hallisey, Dibble**
**& Tanguay, P.A.**

## MEMORANDUM AND ORDER

Emerson Electric Co., a manufacturer of electrical equipment, retained attorney Raymond R. Ouellette of the law firm of Ouellette, Hallisey, Dibble & Tanguay, P.A. (collectively the "defendants") to represent Emerson in a product liability case. After the jury in that case found Emerson liable, Emerson brought this action asserting that Ouellette was negligent in preparing Emerson's defense. In response, defendants sought discovery of certain communications involving Emerson's in-house and post-verdict counsel. Emerson declined to comply, arguing that the communications are privileged. The magistrate judge, however, granted defendants' motion to compel the desired discovery and subsequently denied Emerson's motion for reconsideration.

Emerson now asks that I set aside the magistrate judge's order, asserting that he erred: (1) in interpreting certain New Hampshire evidentiary principles to exclude the communications at issue from the attorney-client privilege; and (2) in finding, alternatively, that Emerson waived the privilege by failing to serve defendants with a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

## I.  BACKGROUND

In the suit underlying the instant action, developer CMB Construction Co. sued Emerson and another party, Weil-McLain, Inc., for manufacturing defective heating systems. Emerson made the igniters and Weil-McLain the overall heating systems for The Links, a CMB Construction condominium development in Lincoln, New Hampshire. In December 1988 and January 1989, the heating systems in several condominiums failed. Pipes froze and burst causing extensive damage to half the condominium units. Repairs were not completed until May 1989, after the prime winter-selling season had ended. Although CMB Construction sold all the damaged units the next winter, it could not command the same sales price for the units that it had during the winter of 1988-89 because of changed market conditions. CMB Construction sought to recover

-2-

its economic losses and repair costs in its suit against Emerson and Weil-McLain.

Emerson's assistant general counsel, Michael Keating, retained Ouellette and his firm to prepare what proved to be an unsuccessful defense. The jury returned a verdict against both Emerson and Weil-McLain, finding Emerson liable for repair costs and $1.4 million in economic-loss damages. Emerson retained new counsel, James Crawford, to work with Ouellette in arguing Emerson's post-verdict motions. After the court entered final judgment against Emerson, it unsuccessfully appealed the decision represented by Crawford alone.

Emerson argues in the instant action that Ouellette failed to adequately address the issue of economic-loss damages at trial and failed to preserve crucial issues for consideration on appeal. In response, defendants have sought to discover Emerson's post-verdict communications with Crawford and any post-verdict communications between Keating and other Emerson employees.[1] Defendants assert that such discovery will help them establish that Emerson failed to take reasonable steps to avoid

---

[1] Defendants also sought to discover communications between Emerson and Weil-McLain and between Weil-McLain and Crawford. Emerson does not challenge the magistrate judge's rulings with respect to these communications.

or limit its damages on appeal, and that its appellate counsel's negligence was a superseding cause of Emerson's injuries.

Emerson has declined both to produce the requested communications and to allow Keating and Crawford to testify about them, asserting that communications between Keating or Crawford and any Emerson employees taking place after June 7, 1994 (the date of the jury verdict) are protected by the attorney-client privilege. The magistrate judge disagreed, interpreting certain New Hampshire evidentiary principles to exclude the communications from the attorney-client privilege. Alternatively, the magistrate judge found that Emerson waived the privilege by failing to serve defendants with a privilege log, pursuant to Fed. R. Civ. P. 26(b)(5), describing how each communication at issue was privileged.

## II.  STANDARD OF REVIEW

Emerson asks me to set aside the magistrate judge's order granting defendants' motion to compel discovery. A district court's review of discovery-related decisions made by a magistrate judge is governed by Fed. R. Civ. P. 72(a), which provides: "'The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any

portion of the magistrate judge's order found to be clearly
erroneous or contrary to law.'" Weeks v. Samsung Heavy Indus.
Co., 126 F.3d 926, 943 (7th Cir. 1997) (quoting Fed. R. Civ. P.
72(a)); accord 28 U.S.C.A. § 636(b)(1)(A) (West 1993); see also
Commodity Futures Trading Comm'n v. Standard Forex, Inc., 882 F.
Supp. 40, 42 (E.D.N.Y 1995) (stating that pre-trial matters
involving discovery, even of privileged materials, are subject to
clearly-erroneous or contrary-to-law standard).

Pursuant to this highly deferential standard, a magistrate
judge is afforded broad discretion in resolving discovery
disputes, and reversal is ordinarily appropriate only if that
discretion is abused. Commodity Futures Trading Comm'n, 882 F.
Supp. at 42; Ellison v. American Nat'l Red Cross, 151 F.R.D. 8,
9-10 (D.N.H. 1993). When the determination in dispute is purely
legal, however, the district court exercises plenary review. See
Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990)
(reviewing court may set aside findings based on "incorrect view
of relevant law"), superseded by rule on other grounds as stated
in Photocircuits Corp. v. Marathon Agents, Inc., 162 F.R.D. 449,
452 (E.D.N.Y. 1995); Mace v. Van Ru Credit Corp., 109 F.3d 338,
340 (7th Cir. 1997) (pure legal determinations reviewed de novo);
United States v. Adlman, 68 F.3d 1495, 1499, 1502 (2d Cir. 1995)

(abuse of discretion found where court applied incorrect legal standard in deciding whether to allow discovery of attorney "work product"). Similarly, in considering mixed questions of law and fact, where the meaning of an applicable legal principle is in dispute, "the reviewing court is not bound by the clearly erroneous standard," but has a "duty to look carefully" at the findings to "detect infection from legal error." LoVuolo v. Gunning, 925 F.2d 22, 25 (1st Cir. 1991). I review Emerson's objection in light of these standards.

## III. DISCUSSION

Emerson contends that the magistrate judge erred: (1) in interpreting certain New Hampshire evidentiary principles to exclude the communications at issue from the attorney-client privilege; and (2) in finding, alternatively, that Emerson waived the privilege by failing to serve defendants with a privilege log pursuant to Fed. R. Civ. P. 26(b)(5). I examine each contention in turn.

### A. New Hampshire Evidentiary Exceptions to Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence provides in civil actions such as this, where state law supplies the rule of decision, that questions of privilege "shall be determined in

accordance with State law." Accordingly, I apply New Hampshire's law of attorney-client privilege to resolve the instant dispute.

New Hampshire has codified its law of attorney-client privilege as Rule 502 of the New Hampshire Rules of Evidence. See Reporter's Notes to N.H.R. Evid. 501 ("These Rules of Evidence include all presently known New Hampshire common-law evidentiary privileges."). Rule 502(b) sets forth the general rule regarding the privilege, stating:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client and his or her representative and the client's lawyer or the lawyer's representative, (2) between the client's lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

N.H.R. Evid. 502(b).

The privilege described by Rule 502(b), however, is not absolute. See N.H.R. Evid. 502(d) & Reporter's Notes thereto; see also McGranahan v. Dahar, 119 N.H. 758, 764 (1979) (attorney-client privilege may not be absolute when "there is a compelling need for the information and no alternative source is avail-

-7-

able"); cf. Nelson v. Lewis, 130 N.H. 106, 109 (1987) (patient partially waives physician-patient privilege by putting medical condition at issue in medical-negligence suit). Two related exceptions potentially are germane to the communications at issue here. Rule 502(d)(3) creates an exception with respect to communications "relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer." N.H.R. Evid. 502(d)(3). In addition, the New Hampshire Supreme Court has held that a client waives the privilege when he places his communications with his attorney "at issue." See Aranson v. Schroeder, 140 N.H. 359, 369-70 (1995). I examine the applicability of each exception to the contested communications.

    (1)  Rule 502(d)(3)

    Defendants contend, and the magistrate judge held, that Rule 502(d)(3) excludes communications from the attorney-client privilege where the assertion of the privilege results from an affirmative act on the part of the privilege-holder, such as filing a malpractice lawsuit, and where the application of the privilege would deny the opposing party information relevant to its case. I reject this argument, because it is based upon an overly broad reading of the exception.

Rule 502(d)(3) is modeled on a proposed but never adopted federal rule of evidence, Rule 503(d)(3), and is "consistent with" Disciplinary Rule 4-101(C)(4) of the Model Code of Professional Responsibility ("CPR"). See Reporter's Notes to N.H.R. Evid. 502(d)(3). There are "no New Hampshire cases asserting this exception." See id. Nevertheless, interpretations of similar provisions adopted by other states and interpretations of CPR Disciplinary Rule 4-101(C)(4) provide guidance as to how the New Hampshire Supreme Court would interpret Rule 502(d)(3). These sources indicate that a New Hampshire court would narrowly interpret the exception to apply only to communications between the client and the attorney charged with wrongdoing.

Section 958 of the California Evidence Code, Cal. Evid. Code § 958 (West 1997), served as a principal model for proposed Fed. R. Evid. 503(d)(3), the rule on which N.H.R. Evid. 502(d)(3) was based. See Advisory Committee Notes to Supreme Court Standard 503(d)(3), reprinted in 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503App.01(2), at 503App.-6 (Joseph M. McLaughlin ed., 1997); 24 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5471, at 53-54 & n.42 (1986) (California evidentiary code provisions, including

section 958, "were influential in the drafting of Rejected [Federal] Rule 503"). The California rule reads similarly to the New Hampshire rule at issue here, stating that "[t]here is no privilege under this article as to a communication relevant to an issue of breach[] by the lawyer . . . of a duty arising out of the lawyer-client relationship." Cal. Evid. Code § 958. In interpreting such language, the California courts have held that "section 958 was not intended to abrogate the [attorney-client] privilege as to communications between the client and the lawyer representing the client when suit is filed against a former lawyer for malpractice. The exception is limited to communications between the client and the attorney charged with malpractice." Schlumberger Ltd. v. Superior Ct., 171 Cal. Rptr. 413, 416-17 (Cal. Ct. App. 1981).

Proposed Fed. R. Evid. 503(d)(3) served in turn as a model for numerous state provisions, including, for example, section 905.03(4)(c) of the Wisconsin evidentiary code, Wis. Stat. Ann. § 905.03(4)(c) (West 1997). See 24 Wright & Graham, supra, § 5471, at 56-57 & n.48. The Wisconsin provision contains identical language to the New Hampshire rule at issue here, stating that "[t]here is no privilege . . . [a]s to a communication relevant to an issue of breach of duty by the lawyer to the lawyer's

-10-

client." Wis. Stat. Ann. § 905.03(4)(c). Like the California courts, the Wisconsin courts have construed such language narrowly, holding that "a waiver of the lawyer-client privilege by maintaining a legal malpractice action cannot be inferred from the language of sec. 905.03(4)(c). . . . [That section] excepts from the privilege only communications between the client and the lawyer who is accused of a breach of duty." Dyson v. Hempe, 413 N.W.2d 379, 386-87 (Wis. Ct. App. 1987).

Finally, commentators interpreting CPR Disciplinary Rule 4-101(C)(4), another rule on which N.H.R. Evid. 502(d)(3) was based, see Reporter's Notes to N.H.R. Evid. 502(d)(3), have also construed the scope of the equivalent language narrowly. Disciplinary Rule 4-101(C)(4) states that a lawyer may reveal "[c]onfidences or secrets necessary to establish or collect his fee or to defend himself . . . against an accusation of wrongful conduct." Model Code of Professional Responsibility DR 4-101(C)(4), reprinted in Charles W. Wolfram, Modern Legal Ethics App. B, at 1049 (1986). The commentary to the rule construes such language to mean that "[an] attorney may disclose information received from the client when it becomes necessary for his own protection, as if the client should bring an action against the attorney for negligence or misconduct . . . . [T]he

rule as to privileged communications does not apply when litigation arises between attorney and client to the extent that _their_ communications are relevant to the issue." Model Code of Professional Responsibility DR 4-101(C)(4) n.19 (emphases added), _reprinted in_ Wolfram, _supra_, App. B, at 1050.

Moreover, Section 116 of the Restatement (Third) of Law Governing Lawyers, which was modeled on Disciplinary Rule 4-101(C)(4), _see_ Reporter's Note cmt. b to Restatement (Third) of Law Governing Lawyers § 116 (Proposed Final Draft No. 1, 1996), contains language similar to that rule and interprets such language similarly. Section 116 states that "[a] lawyer may use or disclose confidential client information when and to the extent that the lawyer reasonably believes it necessary in order to defend the lawyer . . . against a charge . . . [of having] acted wrongfully in the course of representing [a] client." _Id._ § 116. The comments to section 116 construe such language to mean that an attorney may "reveal information _confidentially acquired by him_ in the course of his agency in the protection of a superior interest of himself." _Id._ § 116 cmt. b (emphasis added).

Based on interpretations of similar provisions adopted by other states and interpretations of CPR Disciplinary Rule 4-

101(C)(4), I conclude that a New Hampshire court would construe the language of Rule 502(d)(3) narrowly to apply only to communications between the client and the attorney the client has charged with wrongdoing. Consequently, because the communications at issue here did not occur between Emerson and the defendants, defendants cannot take advantage of Rule 502(d)(3) in seeking production of those communications.[2]

(2) At-Issue Waiver

Although the parties do not expressly address whether the at-issue waiver rule applies to the communications at issue, defendants' brief implies that the waiver should apply to otherwise privileged communications where, as here, the party asserting the privilege has initiated the lawsuit and the communications are relevant to the opposing party's case. In contrast, Emerson's brief impliedly advocates for a more limited application of the exception wherein communications would lose the protection of the privilege only where the privilege-holder

---

[2] This reading of Rule 502(d)(3) is consistent with the New Hampshire Supreme Court's privilege-protective interpretation of the at-issue waiver rule. See Aranson, 140 N.H. at 369-70. As I explain below, the court has determined that a litigant waives the attorney-client privilege by placing confidential communications "at issue" only to the extent that the client "injects the [sought-after] privileged material itself into the case." Id. at 370.

itself injects the privileged material into the case. Because the New Hampshire Supreme Court has already adopted an interpretation consistent with Emerson's view of the exception, see Aranson, 140 N.H. at 369-70, I must reject the interpretation proffered by defendants.

In determining when the at-issue waiver applies, courts employ one of three approaches. See Frontier Refining, Inc. v. Gorman-Rupp Co., 136 F.3d 695, 699-700 (10th Cir. 1998). The "automatic-waiver" rule provides that a litigant automatically waives the attorney-client privilege upon assertion of a claim, counterclaim, or affirmative defense that raises an issue to which otherwise privileged material is relevant. See Independent Prods. Corp. v. Loew's Inc., 22 F.R.D. 266, 276-77 (S.D.N.Y. 1958). A second approach provides that a litigant only waives the privilege when the sought-after material is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense. See Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975). Finally, "several courts have recently concluded that a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation." Frontier Refining, Inc., 136 F.3d at 699-700; see, e.g., Rhone-Poulenc Rorer, Inc. v. Home Indem.

-14-

Co., 32 F.3d 851, 863-64 (3d Cir. 1994) ("The advice of counsel is placed in issue [only] where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.").

In Aranson, the New Hampshire Supreme Court adopted the last of these three approaches. See 140 N.H. at 369-70. Specifically, the court limited the waiver to "circumstances in which the privilege-holder injects the [sought-after] privileged material itself into the case" such that "the information is actually required for the resolution of [an] issue." Id. at 370 (internal quotations omitted).

Applying the Aranson test to the facts of the instant case, I hold that the at-issue waiver exception does not apply to communications between Emerson and either Keating or Crawford that occurred after the jury verdict. First, defendants have failed to show that Emerson has injected its post-verdict communications with either Keating or Crawford into the litigation as a means of establishing that Ouellette was negligent. See Greater Newburyport Clamshell Alliance v. Public Serv. Co. of N.H., 838 F.2d 13, 20 (1st Cir. 1988) (holding that the party seeking privileged information bears the burden of establishing that access to the information is required for the

-15-

resolution of a claim). Although the communications defendants seek to discover may well be relevant, "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged . . . even if . . . the facts to be disclosed are vital, highly probative, directly relevant[,] or even go to the heart of an issue." Rhone-Poulenc Rorer, Inc., 32 F.3d at 864. Accordingly, because Emerson has disavowed any intention of relying on confidential post-verdict communications between it and Crawford or Keating in proving its case, it has not waived the privilege with respect to such communications by bringing its claim against trial counsel.[3]

---

[3] Defendants' reliance on Johnson v. Shaines & McEachern, P.A., No. Civ. 93-238-L, 1994 U.S. Dist. LEXIS 16276 (D.N.H. Oct. 4, 1994), and Inserra v. Hamblett & Kerrigan, P.A., No. Civ. 94-454-M, 1995 WL 54402 (D.N.H. Jan. 31, 1995), as precedent for ordering Emerson to turn over its post-verdict communications is misplaced. Both cases were decided before Aranson and, consequently, articulated the at-issue waiver rule differently from Aranson. Nevertheless, both courts reached results consistent with Aranson, allowing discovery only because the sought-after communications had been placed directly at issue by the plaintiffs. See Johnson, 1994 U.S. Dist. LEXIS 16276, at *2 (where plaintiff placed at issue reasonableness of his reliance on defendant attorney's advice, plaintiff waived attorney-client privilege as to communications with another attorney who had previously represented plaintiff in a number of similar matters); Inserra, 1995 WL 54402, at * 1-2 (where plaintiff placed at issue reasonableness of his reliance on defendant attorney's advice, plaintiff waived attorney-client privilege as to communications with another attorney who simultaneously represented plaintiff in same transaction).
Defendants also rely on a number of decisions from other

-16-

Defendants also have failed to satisfy the Aranson test because they cannot establish that the information they seek is "actually required for the resolution of [an] issue." Aranson, 140 N.H. at 370. Defendants have raised two related defenses in response to Emerson's negligence charge, namely that Emerson failed to take reasonable steps to amend or limit its damages on appeal and that its appellate counsel's negligence was a superseding cause of Emerson's injuries. Such defenses ordinarily are evaluated using an objective test. See Flanagan v. Prudhomme,

_____

jurisdictions. I choose not to follow the cases, however, because they either are inapposite, in that the sought-after communications had been placed directly at issue by the plaintiffs, or they employ an at-issue waiver test that the New Hampshire Supreme Court has expressly rejected. See, e.g., Kaylawongsa v. Moffett, 105 F.3d 283, 290-91 (6th Cir. 1997) (where plaintiff contested reasonableness of defendant attorney's fees, plaintiff waived attorney-client privilege as to communications with another attorney who simultaneously represented plaintiff in same transaction); Bieter Co. v. Blomquist, 156 F.R.D. 173, 176-79 (D. Minn. 1994) (where plaintiff placed at issue reasonableness of his reliance on defendant attorney's advice, plaintiff waived attorney-client privilege as to communications with another attorney who simultaneously represented plaintiff in same transaction); National Excess Ins. Co. v. Civerolo, Hansen & Wolf, P.A., 139 F.R.D. 398, 400-01 (D.N.M. 1991) (where plaintiff brought malpractice suit against attorney for, inter alia, negligent appeal of unfavorable jury verdict, plaintiff waived attorney-client privilege as to communications with another attorney who simultaneously offered advice to plaintiff regarding the appeal); Byers v. Burleson, 100 F.R.D. 436, 438-40 (D.D.C. 1983), criticized in Rhone-Poulenc Rorer, Inc., 32 F.3d at 864, as applying the Hearn relevancy test.

-17-

138 N.H. 561, 575 (1994) ("As a general rule, plaintiffs may not recover damages for harm that could have been avoided through reasonable efforts or expenditures." (emphasis added)); Restatement (Second) of Torts § 918 (1977) (same); Burns v. Bradley, 120 N.H. 542, 545 (1980) ("The test for negligence is whether [a] reasonably prudent person under the circumstances should recognize and foresee an unreasonable risk or likelihood of harm to others." (emphasis added)); Restatement (Second) of Torts § 283 cmt. c (1964) (Negligence is measured by "an objective and external [standard], rather than that of the individual judgment, good or bad, of the particular individual.").

Defendants can prove both defenses solely by reference to the appropriate standard of care and to Crawford's and Keating's actions, the outcomes of which are matters of public record. Consequently, although the communications at issue may be relevant to defendants' mitigation and superseding-cause-of-injury defenses, because the privileged information is not required for the resolution of either defense, defendants cannot take advantage of the at-issue waiver exception. See Aranson, 140 N.H. at 370; see also Rhone-Poulenc Rorer, Inc., 32 F.3d at 864.

**B.  Failure to Serve Privilege Log as**
**    Waiver of Privilege**

Emerson also contends the magistrate judge erred in finding that Emerson waived the attorney-client privilege as to the communications at issue by failing to serve defendants with a privilege log, pursuant to Fed. R. Civ. P. 26(b)(5).

Rule 26(b)(5) provides that when a party claims materials are exempt from disclosure because of a privilege, the party must describe the nature of the withheld materials in a manner that will enable other parties and the court to assess the applicability of the privilege.  Fed. R. Civ. P. 26(b)(5).  The scope of the description necessary to satisfy Rule 26(b)(5) need only be so broad as to permit this assessment.  8 Charles A. Wright et al., Federal Practice and Procedure § 2016.1, at 234-35 (2d ed. 1994) (warning that rigid insistence on certain logging procedures "may go well beyond" what Rule 26(b)(5) requires); accord Advisory Committee Notes to Fed. R. Civ. P. 26(b)(5) ("The rule does not attempt to define for each case what information must be provided when a party asserts a claim or privilege . . . .").  Nevertheless, a blanket claim of privilege is generally an inadequate response to a discovery request.  See

Obiajulu v. City of Rochester, 166 F.R.D. 293, 295 (W.D.N.Y. 1996).

A different principle applies, however, where, for the purposes of its motion to compel discovery, the party seeking discovery concedes that the materials at issue are privileged and asks the court only to determine whether the privilege-holder has waived the privilege as to a whole category of materials. See Jackson v. County of Sacramento, 175 F.R.D. 653, 656 (E.D. Cal. 1997) ("[T]he duty to provide the description required by Rule 26(b)(5) is flexible and does not arise until there is a good faith challenge to the privilege claim."); First Fidelity Bancorp. v. National Union Fire Ins. Co., No. Civ.A.90-1866, 1992 WL 55742, at *2 (E.D. Pa. Mar. 13, 1992). Under such circumstances, a statement asserting that the privilege protects various categories of documents will satisfy Rule 26(b)(5) until such time as the court decides the waiver issue. See Jackson, 175 F.R.D. at 656; see also Durkin v. Shields (In re Imperial Corp. of Am.), 174 F.R.D. 475, 477 (S.D. Cal. 1997) (holding that "nowhere in Fed. R. Civ. P. 26(b)(5) is it mandated that a document-by-document privilege log is required"); SEC v. Thrasher, No. 92 Civ. 6987 (JFK), 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) ("[I]n appropriate circumstances, the court may

permit the holder of withheld documents to provide summaries of the documents by category . . . .").

Here, defendants have never contested Emerson's claim that the communications at issue are privileged. Rather, they have asserted that by filing the instant suit, Emerson waived its attorney-client privilege as to the broad categories of communications defendants seek. Under such circumstances, until such time as he decided the waiver issue, the magistrate judge should have allowed Emerson to satisfy its Rule 26(b)(5) burden through an assertion of privilege as to each category of documents sought. See Jackson, 175 F.R.D. at 656; Durkin, 174 F.R.D. at 477. Because the magistrate judge failed to do so, I must set his decision aside. See LoVuolo, 925 F.2d at 25. Instead, because Emerson timely provided both the required statement of privilege by category (in response to defendants' discovery request) and a more detailed privilege log (immediately following the magistrate judge's ruling on the waiver issue), I hold that Emerson satisfied its Rule 26(b)(5) burden and has not waived its privilege as to the communications at issue with respect to that rule.

## IV.  CONCLUSION

For the foregoing reasons, I conclude that the otherwise privileged communications defendants seek to discover are not exempt from the attorney-client privilege either pursuant to N.H.R. Evid. 502(d)(3) or based on a common law at-issue waiver. Further, I conclude that Emerson did not lose the right to claim that the sought-after communications are privileged by failing to produce a privilege log.  To the extent that the magistrate judge's order is inconsistent with these conclusions, the order is reversed.[4]

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

May 12, 1998

cc:  Russell F. Hilliard, Esq.
     Michael B. Powers, Esq.
     Henry A. Pierce, Esq.

_____

[4]  I reach no conclusion with respect to any particular privilege claim.  The only issue I decide in this order is that Emerson did not waive its claim of privilege as to the contested categories of communications either by placing those communications at issue or by failing to provide a privilege log.